DENNIS P. RIORDAN, Esq., No. 69320
DONALD M. HORGAN, Esq., No. 121547
MICHAEL S. ROMANO, Esq., No. 282182
523 Octavia Street
San Francisco, CA 94102
Telephone No. (415) 431-3472
Facsimile No. (415) 552-2703
Email: Dennis@Riordan-Horgan.com

Attorneys for Plaintiff
JOHN DOE

ORIGINAL FILED
07 JUL 11 PM 12:27
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JL

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>EDMUND BROWN,<br>Attorney General of California,<br>in his official capacity,<br><br>Defendant. | No. C 07 3585<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S PRAYER FOR INJUNCTIVE RELIEF** |

Memorandum of Points and
Authorities in Support of
Plaintiff's Prayer for Injunctive Relief

COPY

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

JURISDICTION . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . 3

A. Plaintiff's Plea Agreement . . . . . . . . . . 3

B. California Sex Offender Registration Law . . . . . . . . . . 4

C. Plaintiff's Current Registration Status . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . 6

I. DEFENDANT IS VIOLATING THE PLAIN TERMS OF PLAINTIFF'S PLEA AGREEMENT IN VIOLATION OF THE U.S. CONSTITUTION . . . . . . . . . . 6

A. General Principles of Law . . . . . . . . . . 6

B. The Terms of Plaintiff's Plea Agreement . . . . . . . . . . 8

C. California Contract Law . . . . . . . . . . 10

II. SPECIFIC PERFORMANCE OF PLAINTIFF'S PLEA AGREEMENT IS THE ONLY APPROPRIATE REMEDY FOR DEFENDANT'S BREACH . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

| Case | Page |
|---|---|
| *Brown v. Poole*, 337 F.3d 1155 (9th Cir. 2003) | 7, 8, 15 |
| *Buckley v. Terhune*, 441 F.3d 688 (9th Cir. 2006) | passim |
| *City of Torrance v. Workers' Comp. Appeals Board*, 32 Cal. 3d 371 (1982) | 11 |
| *People v. Arata*, Cal. App. 3d ___ (May 30, 2007) | 8 |
| *People v. Shelton*, 37 Cal. 4th 759 (Cal. 2006) | 8 |
| *Swenson v. File*, 3 Cal. 3d 389 (Cal. 1970) | 11, 13 |
| *United States v. Anderson*, 970 F.2d 602 (9th Cir.1992) | 7 |
| *United States v. Hallam*, 472 F.2d 168 (9th Cir. 1973) | 15 |
| *United States v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir. 1997) | 8, 12 |
| *United States v. Transfiguration*, 442 F.3d 1222 (9th Cir. 2006) | 12 |

## STATUTES

| Statute | Page |
|---|---|
| 28 U.S.C. § 1331 | 4 |
| 28 U.S.C. §1332 | 4 |
| 42 U.S.C. § 2254 | 7 |
| Cal. Penal Code § 290 | passim |
| Cal. Penal Code § 290.46 | 5, 10 |

## INTRODUCTION

This is a straightforward case. Plaintiff seeks enforcement of the terms of a criminal plea agreement he entered into over 15 years ago. Well-established law provides that criminal defendants have a federal due process right to enforcement of plea agreements entered in state courts. For the past 15 years, Plaintiff has faithfully fulfilled his obligations under his plea agreement. Defendant has not. Since Plaintiff's plea, Defendant has imposed new rules and imposed significant new burdens on Plaintiff that violate specific terms of Plaintiff's plea agreement. In this lawsuit, Plaintiff seeks specific performance of the precise terms of his plea agreement and an injunction barring enforcement of the new rules and obligations imposed by Defendant.

Over 15 years ago, Plaintiff pled *nolo contendere* to a single, non-aggravated felony in a California Superior Court. Plaintiff relinquished his right to a jury trial and agreed to a certain "maximum penalty" as a result of his plea. In return, the prosecution dismissed several counts against Plaintiff and also agreed to the maximum penalty, which included an obligation to register as a sex offender under Cal. Penal Code § 290. In the years that followed, Plaintiff served his sentence, received treatment, successfully completed his term of parole, and has faithfully registered as a sex offender.

The question in this case is whether Plaintiff is entitled to enforcement of the specific terms of his plea agreement, as those terms were understood at the time of the plea. Black letter contract law, which governs plea agreements, plainly holds that parties are bound to the terms of an agreement as those terms were understood at the time the agreement was entered. Furthermore, clearly established Ninth Circuit law clearly binds the government to its original obligations in criminal plea agreements.

Plaintiff's plea agreement plainly states that the terms of his registration obligation are provided in Cal. Penal Code § 290. At the time Plaintiff's plea was entered, Cal. Penal Code § 290 provided, *inter alia*, that (1) Plaintiff would be required to register once with state authorities following his conviction, updating his registration whenever he changed residences; and (2) the information that Plaintiff provided to Defendant as a result of his registration obligation would remain "confidential."

Today, as a result of legislation enacted since Plaintiff's plea, Defendant requires Plaintiff to register annually, regardless of whether he has changed his address. Defendant also publishes Plaintiff's registration information, including his name, photograph, and home address on a publicly available website. This information is not otherwise publicly available. Plaintiff is a prominent, successful, and contributing member of his profession and community. His privacy and protection of his family is of the utmost importance. Defendant's enforcement of registration rules not contemplated in Plaintiff's plea constitute a breach of his agreement with the government.

The parties to Plaintiff's plea agreement could not have possibly envisioned the changes to California's sex offender registration law enacted since his conviction. As discussed below, controlling law clearly provides that the changes to the registration law are not part of Plaintiff's plea bargain. By enforcing the provisions of California's sex offender registration law enacted after Plaintiff's plea agreement, Defendant's is therefore breaching the terms of Plaintiff's plea agreement and violating his constitutional rights.

The Due Process Clause of the Fourteenth Amendment provides a criminal defendant the right to strict enforcement of his plea agreement. There is no doubt that

Defendant is not observing the original terms of Plaintiff's plea agreement. Defendant's actions therefore violate Plaintiff's due process rights, and this Court must grant Plaintiff's prayer for relief, including a permanent injunction to ensure Plaintiff the benefit of the plea agreement he bargained for.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1332.

## STATEMENT OF FACTS

### A. Plaintiff's Plea Agreement

Plaintiff was convicted of a single non-aggravated felony as a result of a plea agreement with the People of the State of California, represented by a county district attorney. (Declaration of John Doe, Exhibit A (filed under seal).) According to the agreement, which is memorialized on a two-page plea form, the district attorney withdrew several charges against Plaintiff. In exchange, Plaintiff agreed to forgo his trial rights, admit certain allegations against him, and abide by the sentence and conditions set by the court. The parties agreed that Plaintiff faced a specific "maximum penalty" as a result of his plea. (*Id.* ¶ 10.)

According to the explicit terms of the agreement, the maximum possible penalty that Plaintiff faced as a result of his plea was one year in county jail plus probation; four years parole; $20,000 in fines; DNA testing; and registration as a sex offender pursuant to Cal. Penal Code § 290. (*Ibid.*)

The plea agreement form was signed by Plaintiff, his attorney, the deputy district attorney prosecuting the case, and the Superior Court judge who accepted the plea. (*Id.*)

Plaintiff was ultimately sentenced to serve four months in a county jail work furlough program. He was also required to register as a sex offender. Cal. Penal Code § 290.

Since his conviction, Plaintiff served his sentence, received treatment, successfully completed his term of parole, and has faithfully registered as a sex offender.

**B. California Sex Offender Registration Law**

California's sex offender registration regime is governed by Cal. Penal Code § 290, *et seq.* At the time that Plaintiff's plea was entered and accepted by the Superior Court, Penal Code § 290 contained the following relevant provisions:

- **Subsection (a):** "Any person who . . . has been . . . convicted in this state [of certain criminal offenses] . . . shall, within . . . 14 days of coming into any county or city, or city and county in which he or she temporarily resides or is domiciled for that length of time register with the chief of police of the city in which he or she is domiciled[.]"

- **Subsection (e):** "The registration shall consist of (1) a statement in writing signed by the person, giving such information as may be required by the Department of Justice, and (2) the fingerprints and photograph of the person."

- **Subsection (f):** "If any person required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address."

- **Subsection (g):** "Any person required to register under this section who violates any of its provisions is guilty of a misdemeanor."

- **Subsection (i):** "The statements, photographs, and fingerprints herein required shall not be open to inspection by the public or by any person other than a regularly employed peace or other law enforcement officer."

In 2004, the California legislature made three relevant amendments to the state's sex offender registration law. First, it amended subsection (i) of Penal Code § 290 to provide that sex offender registration information would no longer be kept confidential. *See* Cal. Stats. 1994, c. 867 (A.B. 2500), § 2.7 (WL CA LEGIS 867 (1994)). Second, the legislature enacted Cal. Penal Code § 290.46 ("Megan's Law"),

directing Defendant to establish and maintain a website accessible to the public for distributing sex offender registration information collected from certain offenders, including Plaintiff. The sex offender website maintained by Defendant (www.meganslaw.ca.gov) currently publishes the name, date of birth, home address, physical description, gender, race, photograph, and record of conviction of persons required to register as sex offenders in California, including Plaintiff. Third, the legislature amended subsection (a) of Penal Code § 290 to require persons who register as sex offenders in California to update their registration with state officials every year, regardless of whether the registrant has changed addresses. *See* Cal. Stats. 1994, c. 865 (A.B. 3513), § 1 (WL CAL LEGIS 865 (1994)).

**C. Plaintiff's Current Registration Status**

Since his conviction, Plaintiff has faithfully registered as a sex offender. In particular, to order to avoid any further violation of law, Plaintiff has remained in compliance with all of the current sex offender registration obligations enforced by Defendant. Plaintiff updates his registration information annually, within five days of his birthday.[1] In addition, Plaintiff's name, photograph, date of birth, and home address are currently published on the public Megan's Law website maintained by Defendant.[2]

//

//

//

//

//

[1] In 1996, Penal Code § 290(a) was amended further to require that sex offenders update their registration information annually within five (5) days of his or her birthday, rather than within ten (10) days of his or her birthday, as had been previously required.

[2] Shortly after the website became public, Plaintiff petitioned to have his registration information excluded from online publication. Plaintiff's registration information was temporarily excluded from the public website pending resolution of his petition. His petition was ultimately denied.

## ARGUMENT

### I. DEFENDANT IS VIOLATING THE PLAIN TERMS OF PLAINTIFF'S PLEA AGREEMENT IN VIOLATION OF THE U.S. CONSTITUTION

#### A. General Principles of Law

It is longstanding and clearly established federal law that "due process rights conferred by the federal constitution allow [Plaintiff] to enforce the terms of [his] plea agreement." *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). Furthermore, "a criminal defendant has a due process right to enforce the terms of his plea agreement." *Buckley v. Terhune*, 441 F.3d 688 (9th Cir. 2006) (en banc) (citing *Santabello v. New York*, 404 U.S. 257, 261-62 (1971)).

The rule is sufficiently entrenched that federal courts reviewing state plea agreements under the deferential standard governing habeas corpus petitions, *see* 42 U.S.C. § 2254 ("AEDPA"), have held state governments to the strict terms of plea agreements even when the prosecution mistakenly agreed to improper plea terms. In both *Buckley v. Terhune*, 441 F.3d 688, and *Brown v. Poole*, 337 F.3d 1155, the Ninth Circuit granted habeas relief and ordered specific performance of plea agreements where the prosecutors accidentally entered into plea agreements by offering illegal early release dates to murders. In both cases, the Ninth Circuit held that a mistaken plea "may be a problem for the state, but not for [the defendant]." *Poole*, 337 F.3d at 1161; *see also United States v. Anderson*, 970 F.2d 602, 607 (9th Cir.1992) ("A plea induced by an

unfulfillable promise is no less subject to challenge than one induced by a valid general promise which the government simply fails to fulfill.")[3]

Plea agreements are construed and enforced according to contract law from the state where the plea was entered. *Buckley*, 441 F.3d at 695; *Poole*, 337 F.3d at 1160, n.2. In California, "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles." *People v. Shelton*, 37 Cal. 4th 759, 767 (Cal. 2006); *Buckley*, 441 F.3d at 695 ("California courts are required to construe and interpret plea agreements in accordance with state contract law. . . . '[a]ll contracts, whether public or private, are to be interpreted by the same rules[.]'") (quoting Cal. Civ. Code §§ 1635, 1638, 1644). As a first principle, a plea agreement is governed by the plain meaning of its terms. *Buckley*, 441 F.3d at 695.

"Just as with other forms of contracts, a negotiated guilty plea is a 'bargained-for quid pro quo.' Thus, either party can be said to 'breach' a plea bargain if it fails to live up to the promises it made under the terms of the agreement." *United States v. Sandoval-Lopez*, 122 F.3d 797, 800 (9th Cir. 1997). Indeed, a California court of appeal recently employed the Due Process Clause in holding that the government violated *implied* terms of a criminal plea bargain. *People v. Arata*, Cal. App. 3d ___ (May 30, 2007) ("'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.'") (quoting *Santobello*, 404 U.S. at 262).

---

[3] As the court explained in *Buckley*: "We arrive at our decision notwithstanding the state's argument that a . . . fifteen year prison term is not a lawful sentence for second degree murder under California law. Consistent or not with the state's sentencing statute, that is the bargain that California made in 1987. [The defendant] has fulfilled his promises, and it is now too late for the state to argue that it was not in a position to offer him a fifteen year sentence in exchange." 441 F.3d at 699.

### B. The Terms of Plaintiff's Plea Agreement

The terms of Plaintiff's plea agreement are clear. The government agreed to drop several charges against Plaintiff in exchange for his forgo his trial rights and plead guilty to one non-aggravated felony. According to paragraph 10 of the plea form signed by Plaintiff, his attorney, the deputy district attorney prosecuting the case, and the Superior Court judge who accepted the plea, the parties agreed that "as a result of [Plaintiff's] plea" he would be subject to a specific "maximum penalty," which included "290 P.C. registration"—a clear reference to registration requirements provided in Penal Code § 290. (Declaration of John Doe, Ex. A, ¶ 10 (filed under seal)); *cf. Buckley*, 441 F.3d at 691 (enforcing a plea form with the same language).

The issue here is Plaintiff's obligation to register as a sex offender pursuant to Penal Code § 290. At the time of Plaintiff's plea, his registration obligation under Penal Code § 290 was modest compared to present day standards. In particular, under Penal Code § 290 in effect at the time of Plaintiff's plea, Plaintiff was required to register with state officials only once; and he was required to update his registration only if he changed his residential address. Also, under Penal Code § 290 in effect at the time of Plaintiff's plea, all of the information that Plaintiff provided to officials as a result of his registration would remain "confidential." *See* Former Cal. Penal Code § 290(i) ("The statements, photographs, and fingerprints herein required shall not be open to inspection by the public or by any person other than a regularly employed peace or other law enforcement officer.") Both provisions were extremely important to Plaintiff at the time of his plea. Plaintiff is a prominent, successful, and contributing member of his profession and community. His privacy and protection of his family is of the utmost importance. Thus

the terms of his plea agreement and, in particular, the precise safeguards provided in Cal. Penal Code § 290, subsections (a) and (i), at the time of his plea were specifically contemplated by Plaintiff and critical to the acceptance of his plea because they provided a predictable and limited set of rules for his lifelong obligation to maintain his sex offender registration with minimal interference with his daily life and (most importantly) protection of his privacy to the greatest extent possible. (Declaration by John Doe (filed under seal).)

Today, as a result of amendments to Penal Code § 290 enacted many years after Plaintiff's conviction, Plaintiff is subject to substantial additional registration burdens, which were not possibly contemplated at when his plea was entered and greatly exceed the "maximum penalty" agreed to at the time. In particular, current law requires Plaintiff to update his registration with state officials every year, regardless of whether he changes residences. *See* Cal. Penal Code § 290(a). In addition, the registration information provided by Plaintiff, including his name, home address, date of birth, and photograph, is no longer kept confidential. *See* Cal. Penal Code §§ 290(i); 290.46. This information is not otherwise publicly available. Plaintiff's registration information is now published on a publicly available internet website operated by Defendant. *See* Cal. Penal Code § 290.46; www.meganslaw.ca.gov.

The sole question in this case is whether Plaintiff's "maximum penalty," which explicitly invoked an obligation to register pursuant to Penal Code § 290, is limited to the provisions and terms of registration statute as it existed at the time of Plaintiff's plea.

//

//

### C. California Contract Law

California contract law clearly provides that when terms of an agreement rely on a statute, the agreement is governed by the language of the statute in effect at the time that the agreement was formed; parties are not bound by subsequent changes to the statute. *Swenson v. File*, 3 Cal.3d 389, 393 (Cal. 1970) ("[T]he general rule . . . incorporates into contracts existing, but not subsequent, law."); *City of Torrance v. Workers' Comp. Appeals Bd.*, 32 Cal.3d 371, 378 (1982) ("Under principles of contract interpretation, all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated.") (citing 1 Witkin, Summary of Cal. Law Contracts, § 692, p. 625).

A contract cannot bind a party to new obligations as a result of changes to a law contained in a contract. *Swenson*, 3 Cal.3d at 393. "[L]aws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." *Ibid.* "[T]he parties could have originally agreed to incorporate subsequent changes in the law . . . but there is no evidence that they did so in this case." *Ibid.* "[T]o hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions." *Ibid.*

It therefore follows from clearly established California contract law that Plaintiff's obligations under his plea agreement are governed by the registration

requirements under Penal Code § 290 as it existed at the time of his agreement. *See e.g.*, *Arata*, Cal. App. 3d __ (holding that a California defendant was entitled to the benefit of laws in effect at the time of his plea agreement and that enforcement of subsequently enacted amendments to those laws significantly impaired the defendant's plea contract).

Furthermore, the Ninth Circuit has clearly held that under the Due Process Clause it is the government (not a criminal defendant) that bears the risk of any change in law that may effect the terms of a plea agreement. *Sandoval-Lopez*, 122 F.3d at 801. Absent a specific provision anticipating potential legislative changes, "the prosecution [bears] the risk . . . [of any] change in the relevant substantive law" that may affect the parties' obligations under a plea agreement:

> It is the government, not an individual criminal defendant, who is the repeat player in the plea bargaining process. Because all plea agreements are negotiated against the backdrop that the law can change by way of judicial interpretation, the prosecution "knew or should have known that comparable changes in the law occur from time to time." The failure of the [government] to [anticipate] . . . a development in the substantive law (or for any other reason) is thus a failure to cover a predictable contingency.

*United States v. Transfiguration*, 442 F.3d 1222, 1229 (9th Cir. 2006). Furthermore, because "a defendant's liberty is at stake, the government is ordinarily held to the literal terms of the plea agreement it made." *Ibid.* "The government gets what it bargains for but nothing more." *Ibid.*[4]

Here, the government failed to anticipate amendments to California's sex offender registration scheme. In particular, the government failed to anticipate that at some point subsequent to Plaintiff's plea, state law would require sex offenders to update

---

[4] Ambiguities in plea agreements are construed in favor of the criminal defendant. *Id.* at 1229.

their registration annually and in person, rather than only upon a change of address. The government also failed to anticipate that it would want to publish sex offender registration information worldwide, over an electronic information sharing network (the internet), which did not exist at the time of Plaintiff's plea.

In fact, the district attorney and Superior Court Judge assigned to Plaintiff's criminal case promised, by invoking Penal Code § 290, that Plaintiff's registration information would remain "confidential." *See* Former Cal. Penal Code § 290(i). The confidentiality provision was not only significant to Plaintiff because it protected his privacy and personal and professional interests, not to mention his safety and the safety of his family, but it also protected a strong pubic interest in preventing vigilantism. (*See* "Two Sex Offenders Shot to Death in Their Homes," *New York Times*, April 17, 2006; "Killer's Use of Sex-Offender List," *New York Times*, April 19, 2006; "Threats of Violence As Homes For Sex Offenders Cluster," *New York Times*, Oct. 9, 2006 (reporting on an arson and murder plot against registered sex offenders).) At the time of Plaintiff's plea, the parties had a very clear understanding of Plaintiff's "maximum penalty" and his obligations to register as a sex offender as a result of his plea. Plaintiff's plea agreement specifically invoked Penal Code § 290 as specifying the terms of Plaintiff's registration responsibilities. Under controlling California contract law, "[t]he parties are presumed to have had existing law in mind when they executed their agreement[.]" *Swenson*, 3 Cal.3d at 393. Furthermore, as discussed above, settled California law provides that the terms of the agreement, including statutory rules, in effect at the formation of the contract, or plea, control the each party's obligations. *Ibid.*

Plaintiff has faithfully observed the terms of his plea agreement: he served his sentence, completed his term of supervised probation, and continues to register as a sex offender. Defendant has not. Defendant currently requires that Plaintiff update his registration information annually, within five days of his birthday. *See* Cal. Penal Code § 290. Defendant also no longer keeps Plaintiff's registration information confidential. *See* Cal. Penal Code § 290(i). Defendant publishes this information on its publicly available "Megan's Law" website, www.meganslaw.ca.gov.

In sum, it is settled law in California and this federal Circuit that plea agreements that invoke specific pieces of legislation must follow the legislation as it existed at the time of the plea agreement. Any changes of law, or amendments to the referenced statutes, are not part of the plea agreement and cannot be enforced. Defendant's actions violate the original terms of Plaintiff's plea agreement and therefore constitute a breach of the agreement, in violation of Plaintiff's federal due process rights.

## II. SPECIFIC PERFORMANCE OF PLAINTIFF'S PLEA AGREEMENT IS THE ONLY APPROPRIATE REMEDY FOR DEFENDANT'S BREACH

"Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to 'repair the harm caused by the breach.'" *Buckley*, 441 F.3d at 699 (quoting *People v. Toscano*, 124 Cal. App. 4th 340, 345 (Cal. 2004)). The Ninth Circuit has repeatedly held that when, as here, a criminal defendant has already served his criminal sentence and fulfilled the terms of his obligations under a plea agreement, the defendant has "'paid in a coin that the state cannot refund.'" *Buckley*, 441 F.3d at 699 (quoting *Brown*, 337 F.3d at 1161). When, as here, the state's breach of a plea agreement cannot be remedied by rescission of the agreement—because the state has already received the

benefit of its bargain—the breach is best addressed "by holding the state to its agreement and affording [the defendant] the benefit of his bargain." *Buckley*, 441 F.3d at 699.

Because Defendant's breach of Plaintiff's plea agreement amounts to a violation of Plaintiff's federal due process rights, *Brown*, 337 F.3d at 1159; and because specific performance of the agreement is the only available remedy, *Buckley*, 441 F.3d at 699; Plaintiff respectfully requests that this Court enjoin Defendant from enforcing those new provisions of California's sex offender registration law that conflict with the terms of Plaintiff's plea agreement, as understood at the time the agreement was entered. *See United States v. Hallam*, 472 F.2d 168, 169 (9th Cir. 1973) ("[D]ue respect for the integrity of plea bargains demands that once a defendant has carried out his part of the bargain the Government must fulfill its part.")

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion for a permanent injunction.

Dated: July 9, 2007

Respectfully Submitted,

Dennis P. Riordan
Donald M. Horgan
Michael S. Romano
RIORDAN & HORGAN

DENNIS P. RIORDAN
Attorneys for Plaintiff John Doe