```
 1                 UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3

 4  JOHN DOE,                    )

 5                  PLAINTIFF,   )

 6  VERSUS                       )  CASE NO. C07-3585JL

 7                               )  JANUARY 16, 2008

 8  EDMUND BROWN, JR.,           )  SAN FRANCISCO, CALIFORNIA

 9                  DEFENDANT.   )

10  _____)

11              BEFORE THE HONORABLE JAMES LARSON

12         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13  APPEARANCES:
    FOR THE PLAINTIFF:    STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
14                        ATTORNEY GENERAL'S OFFICE
                          BY:  PEGGY S. RUFFRA
15                        DEPUTY ATTORNEY GENERAL
                          455 GOLDEN GATE AVENUE
16                        SAN FRANCISCO, CA. 94102

17  FOR DEFENDANT:        RIORDAN AND HOGAN
                          BY:  DENNIS RIORDAN, ESQ.
18                        523 OCTAVIO STREET
                          SAN FRANCISCO, CALIFORNIA 94102
19
                          MILLS LEGAL CLINIC
20                        BY:  MICHAEL S. ROMANO, ESQ..
                          CROWN QUADRANGLE
21                        559 NATHAN ABBOTT WAY
                          STANFORD, CALIFORNIA 94305
22

23

24  REPORTED BY:          JUANITA GONZALEZ

25                        CSR NO. 3003
```

```
1              THE CLERK:  CALLING CIVIL CASE 07-3585, JOHN DOE VERSUS

2  EDMOND BROWN JUNIOR.

3              YOUR APPEARANCES, PLEASE.

4              MR. RIORDAN:  GOOD MORNING.  DENNIS RIORDAN AND MICHAEL

5  ROMANO FOR THE PLAINTIFF, JOHN DOE.

6              MS. RUFFRA:  PEGGY RUFFRA, DEPUTY ATTORNEY GENERAL, FOR

7  THE DEFENDANT, JERRY BROWN.

8              THE COURT:  THIS IS DEFENDANT'S MOTION TO DISMISS

9  PURSUANT TO RULE 12(B)(6).  I READ THE PAPERS.  MR. RIORDAN,

10 OBVIOUSLY, THERE IS NO ESTABLISHED FEDERAL LAW ON THIS

11 PARTICULAR POINT.  THERE ARE A FEW THINGS THAT COME CLOSE TO IT.

12 I THINK YOU NEED TO ADDRESS THE ARATA CASE AS TO WHY YOU THINK

13 THAT APPLIES TO THIS SITUATION, THE GIPSON CASE  -- AND I

14 UNDERSTAND, ESSENTIALLY, WE'RE JUST DEALING WITH SUFFICIENCY OF

15 THE PLEADINGS AT THIS POINT, BUT WHAT EVIDENCE IS THERE OR WOULD

16 THERE BE THAT THE PETITIONER RELIED ON ANY EXPRESS OR IMPLIED

17 REPRESENTATION THAT THE REGISTRATION REQUIREMENTS WOULDN'T

18 CHANGE?  AND I HATE TO THROW YOU SO MANY QUESTIONS AT

19 THE OUTSET, BUT I ASSUME THAT YOU'RE PREPARED TO DEAL WITH THEM.

20 I'M NOT QUITE CLEAR EXACTLY WHAT THE REGISTRATION REQUIREMENT

21 WAS IN THIS CASE.  I KNOW HE HAD TO REGISTER ONCE, BUT WAS THAT

22 LIMITED IN TIME, OR WAS THAT FOR ALL TIME?

23             MR. RIORDAN:  NO, YOUR HONOR.  HE REGISTERED ONCE AND

24 THEN YOU RE-REGISTER WHENEVER YOU MOVE.

25             THE COURT:  THAT'S IT?
```

1          MR. RIORDAN:  THAT WOULD BE IT, AS OPPOSED TO

2  SUBSEQUENT AMENDMENTS WHICH ARE THAT YOU REGISTER EVERY YEAR

3  REGARDLESS OF WHETHER OR NOT YOU MOVE IN A PERIOD, FIVE OR TEN

4  DAYS WITHIN YOU BIRTHDAY, AND THAT YOU'VE REGISTERED ONCE, AND

5  THAT GIVES YOUR CURRENT ADDRESS, AND THERE IS NO CHANGE, THEN

6  WHAT'S THE EFFECT OF THE NEW LAW?

7          THE COURT:  ISN'T THE SAME INFORMATION AVAILABLE TO

8  EVERYBODY THAT WOULD WANT TO TAKE A LOOK AT IT?

9          MR. RIORDAN:  UNDER THE OLD LAW, THE INFORMATION WAS

10 NOT AVAILABLE TO ANYONE.

11         THE COURT:  I SEE.  SO IT REMAINED CONFIDENTIAL AS JUST

12 BETWEEN LAW ENFORCEMENT AND THE DEFENDANT?

13         MR. RIORDAN:  THAT'S RIGHT, YOUR HONOR.  THE STATE HAS

14 QUIBBLED WITH OUR USE OF THE WORD "CONFIDENTIAL" AND SAID THAT

15 THAT IS NOT IN THE STATUTE.  ACTUALLY, IT EXCLUSIVELY IS.  THE

16 SECTION THAT WE'RE TALKING ABOUT IS DENOMINATED IN THE STATUTE

17 "CONFIDENTIAL RECORDS," AND IT THEN GOES ON TO SAY THAT THE

18 INFORMATION WILL NOT BE AVAILABLE TO ANYONE OTHER THAN A LAW

19 ENFORCEMENT OFFICER.  AND SO WE'RE TALKING ABOUT THE DIFFERENCE

20 AT THAT TIME BETWEEN YOUR ADDRESS, PHOTOGRAPH, FINGERPRINTS, SO

21 FORTH, ONLY BEING AVAILABLE TO A LAW ENFORCEMENT OFFICER BY

22 FORCE OF LAW; AND NOW WHEN ALL OF THAT INFORMATION WILL APPEAR

23 WHEN ANYONE GOOGLES, YOUR NAME WILL APPEAR WORLDWIDE IF ANYONE

24 PUT YOUR NAME IN THAT INTO A COMPUTER UNDER GOOGLE.  THAT IS THE

25 DIFFERENCE IN THE -- RATHER DRAMATIC DIFFERENCE IN THE

1    AVAILABILITY OF THE INFORMATION.

2         I'LL START WITH THE COURT'S FIRST QUESTION OR SECOND

3    QUESTION, UNLESS THE COURT HAS SOME MORE THAT I SHOULD NOTE

4    BEFORE I BEGIN.

5         THE COURT:  I'LL JUST INTERRUPT YOU AS I PLEASE.

6         MR. RIORDAN:  I THINK THAT THERE IS REALLY A SINGLE,

7    CRITICAL LEGAL ISSUE TO BE EXPLORED HERE IN TERMS OF THE

8    AUTHORITY; AND THAT IS THE GIPSON LINE OF CASES ON THE ONE HAND,

9    AS OPPOSED TO THE AUTHORITY WE HAVE CITED WHICH STANDS FOR THE

10   PROPOSITION THAT EXISTING LAW IS INCORPORATED INTO CONTRACTS AT

11   THE TIME THAT THEY ARE MADE, AND FUTURE LAW IS NOT WITHOUT AN

12   EXPLICIT INCORPORATION CLAUSE.

13        WHAT GIPSON SAYS, WHAT A MORE RECENT DECISION, OBERG,

14   CITED BY THE PEOPLE, SAYS -- AND I THINK THAT OBERG -- THEY'RE

15   GOING TO CITE YET ANOTHER CASE FOR THE SAME PROPOSITION.  THEY

16   ALL DEAL WITH AN ARGUMENT THAT HAS BEEN REJECTED TIME AND TIME

17   AGAIN FOR OVER THE LAST TWO DECADES, AND THAT ARGUMENT IS

18   SOMEONE COMES INTO COURT WHO ENTERED INTO A PLEA BARGAIN, FOR

19   INSTANCE, AT A TIME WHEN THE PENALTY FOR THE ENHANCEMENT FOR A

20   PRIOR CONVICTION WAS FIVE YEARS.  THEY COME INTO COURT 20 YEARS

21   LATER, 10 YEARS LATER, FIVE YEARS LATER, AND THEY HAVE COMMITTED

22   A NEW FELONY AND THEY -- AT THE TIME WHEN THE THREE STRIKES LAW,

23   FOR INSTANCE, WAS IN EFFECT -- AND THEY SAY, RATHER THAN GETTING

24   25 YEARS TO LIFE FOR MY TWO PRIOR FELONIES, I CAN ONLY GET FIVE

25   YEARS FOR EACH ONE, TOTAL OF 10 YEARS, BECAUSE AT THE TIME THAT

1  I PLED GUILTY, THE PENALTY FOR A PRIOR WAS FIVE YEARS.

2          AGAIN AND AGAIN THE COURTS HAVE SAID, FROM THE UNITED

3  STATES SUPREME COURT DOWN, NO, YOU'RE WRONG, BECAUSE YOU ARE NOT

4  RECEIVING A PENALTY FOR THE CONDUCT THAT YOU PLED GUILTY TO FOR

5  THE PRIOR THAT YOU PLED GUILTY TO.  YOU ARE RECEIVING A PENALTY

6  FOR A CRIME THAT YOU COMMITTED AFTER THE THREE STRIKES LAW WAS

7  PASSED AT A TIME WHEN YOU WERE ON CLEAR NOTICE THAT IF YOU

8  COMMITTED A NEW CRIME YOU WOULD RECEIVE 25 YEARS FOR THAT.  AND

9  SO IT WAS REJECTED AS A EX POST FACTO CLAIM.  IT WAS REJECTED AS

10 A DOUBLE JEOPARDY CLAIM, AND THEN IN A COUPLE OF RECENT CASES

11 IT'S BEEN RECYCLED BACK AS A CONTRACTS CLAIM IN GIPSON AND

12 OBERG.  AND WHAT THOSE OPINIONS HAVE SAID IS THAT, AGAIN, YOU'RE

13 NOT TALKING -- YOU DIDN'T ENTER INTO A BARGAIN.  THERE IS

14 NOTHING IN YOUR BARGAIN THAT DEALT WITH THE QUESTION OF WHAT THE

15 CONSEQUENCES OF YOUR FELONY WOULD BE IF IN THE FUTURE YOU

16 COMMITTED A NEW CRIME, AND IN EXPLICIT LANGUAGE -- AND I THINK

17 THIS IS CRITICAL -- IS THAT THE CONTRACT CLAUSE -- AND WE ARE

18 NOT PROCEEDING AGAINST  -- UNDER THE CONTRACT CLAUSE -- BUT THE

19 CONTRACT CLAUSE -- CONTRACTS ARE DEEMED TO INCORPORATE AND

20 CONTEMPLATE NOT ONLY THE EXISTING LAW, BUT THE RESERVE POWER OF

21 THE STATE TO AMEND THE LAW OR ENACT ADDITIONAL LAWS FOR THE

22 PUBLIC GOOD AND IN FURTHERANCE OF PUBLIC POLICY.

23          WHAT THOSE CASES SAY IS THAT THE FACT THAT YOU ENTER

24 INTO A CONTRACT CANNOT FREEZE OR PARALYZE THE STATE FROM, IN THE

25 FUTURE, ENACTING LAWS FOR CONDUCT THEREAFTER.  AGAIN, WE'LL

1  DISTINGUISH OURSELVES FROM THE CONTRACT CLAUSE, BUT JUST FOR THE

2  MINUTE TO THE ANALOGY.

3      IF YOU ENTERED INTO A CONTRACT TO PAY YOUR WORKERS

4  $5.00 AN HOUR FOR THE FIRST YEAR AND $6.00 AN HOUR FOR THE

5  SECOND YEAR, AND AT THE END OF THE YEAR THE STATE DECIDED TO

6  PASS A LAW RAISING THE MINIMUM WAGE TO $8.00, THE FACT THAT YOU

7  ENTERED INTO A CONTRACT COULD NOT PARALYZE OR FREEZE THE STATE

8  FROM ENACTING A NEW MINIMUM WAGE CLAUSE THAT WOULD APPLY TO THE

9  SECOND YEAR OF THE CONTRACT.  IT WOULD NOT IN ANY WAY GIVE YOU A

10  CAUSE OF ACTION FOR A HIGHER WAGE FOR THE YEAR THAT OCCURRED

11  PRIOR TO THE ENACTMENT OF THIS NEW LAW.

12      WHAT WE HAVE HERE IS A SITUATION IN WHICH DOE IS NOT

13  CLAIMING THAT HIS PLEA BARGAIN IN ANY WAY FROZE THE STATE FROM

14  PASSING LAWS THAT WOULD INCREASE THE CONSEQUENCES OF HIS PAST

15  CONVICTION SHOULD HE ENGAGE IN SUBSEQUENT AND FUTURE ILLEGAL

16  CONDUCT.  WHAT HE IS SAYING -- AND THIS WAS NOT INVOLVED IN

17  GIPSON, NOT INVOLVED IN OBERG, NOT INVOLVED IN ANY OF THOSE

18  CASES, IS THAT --

19      THE COURT:  BUT YOU'RE STILL SAYING THAT THOSE CASES

20  HAVE TO BE EXTINGUISHED IN ORDER TO SUSTAIN YOUR ARGUMENT.

21  YOU'VE GOT THE FURTHER DISABILITY OF THE SUPREME COURT, THE

22  NINTH CIRCUIT, AND THE CALIFORNIA SUPREME COURT, SAYING THAT

23  REGISTRATION AS A SECOND OFFENDER IS NOT EVEN PUNISHMENT; IT'S A

24  REGULATORY SCHEME.

25      MR. RIORDAN:  THIS IS NOT AN EX POST FACTO ARGUMENT.

1        THE COURT:  I UNDERSTAND THAT.  THERE ARE CERTAIN

2   PREDICTABLE CONSEQUENCES FROM THE RULINGS IN THOSE OTHER CASES.

3   LET'S JUST LOOK AT IT FROM THE RUBRIC THAT YOU'RE SUGGESTING.

4   YOU'RE SUGGESTING THAT WHEN THIS PARTICULAR DEFENDANT ENTERED

5   INTO HIS PLEA BARGAIN AND DECIDED TO PLEAD GUILTY, HE THOUGHT

6   ABOUT AND CONTEMPLATED THE POSSIBILITY OF A CHANGE IN THE

7   REGISTRATION LAWS AS PART OF HIS DECISION TO PLEAD GUILTY, WHICH

8   IS A STRETCH BY ANY MEANS.

9        MR. RIORDAN:  YOUR HONOR, HE THOUGHT ABOUT THE FACT,

10  WAS TOLD ABOUT THE FACT THAT UNDER CALIFORNIA LAW THE

11  INFORMATION THAT HE GAVE AS PART OF A REGISTERING WOULD BE

12  ABSOLUTELY CONFIDENTIAL.  HE ABSOLUTELY THOUGHT ABOUT THAT.

13  THAT IS A QUESTION OF FACT THAT WE HAVE ADEQUATELY PLED AND ARE

14  CERTAINLY PREPARED TO OFFER EVIDENCE OF.

15        THE COURT:  BUT AT THIS POINT THERE IS NO FEDERAL LAW

16  THAT SUSTAINS THAT POSITION.  RIGHT?

17        MR. RIORDAN:  NO FEDERAL LAW THAT?

18        THE COURT:  THAT SUSTAINS YOUR POSITION OR SUPPORTS

19  YOUR POSITION.

20        MR. RIORDAN:  THAT'S ABSOLUTELY UNTRUE, YOUR HONOR.

21  THERE IS A GREAT DEAL OF FEDERAL LAW THAT SAYS THAT THE STATE IS

22  BOUND TO THE PROVISIONS OF A PLEA BARGAIN; AND IN THIS CASE THE

23  STATE OF CALIFORNIA SAID TO MR. DOE, "MR. DOE, YOU ARE PLEADING

24  GUILTY TO A MAXIMUM PENALTY".  THIS IS WRITTEN DOWN.  THE WORDS

25  ARE ABOVE HIS SIGNATURE.  "WE ARE GOING TO TELL YOU WHAT THE

1  MAXIMUM PENALTY IS AND THE MAXIMUM PENALTY FOR THE CRIME THAT

2  YOU --" I THINK WE WOULD AGREE WITH THIS, YOUR HONOR.  WE BOTH

3  KNOW THAT IN A PLEA BARGAIN THERE IS NOTHING MORE IMPORTANT TO A

4  DEFENDANT THAN THE MAXIMUM PENALTY.

5        THE COURT:  ABSOLUTELY.  THE PROBLEM IS YOU HAVE THE

6  UNITED STATES SUPREME COURT SAYING, IN A SLIGHTLY DIFFERENT

7  CONTEXT, A DIFFERENT LEGAL THEORY, BUT THE SAME KIND OF CONTEXT,

8  THAT THIS IS NOT A PENALTY.

9        MR. RIORDAN:  WELL, BUT THE LANGUAGE OF THIS PARTICULAR

10  BARGAIN IS, "MY ATTORNEY HAS EXPLAINED TO ME THAT THE MAXIMUM

11  PENALTY --" AND THIS IS WRITTEN DOWN -- I MEAN -- SO, AGAIN,

12  WE'RE TALKING ABOUT A CONTRACT HERE.  IF THE STATE ENTERED INTO

13  A WRITTEN AGREEMENT AND SAYS, THESE ARE THE CONSEQUENCES OF YOUR

14  PLEA, THEN THE -- IT BECOMES A TERM OF THE BARGAIN.  THE MAXIMUM

15  PENALTY IS REGISTRATION UNDER 290.C.  290.C HAS A

16  CONFIDENTIALITY PROVISION AND, YOUR HONOR, I SUBMIT TO YOU --

17        THE COURT:  WELL, I THINK WE'RE PERHAPS JUMPING AHEAD.

18  BUT WHAT EXACTLY WAS SAID AT THE CHANGE OF PLEA?

19        MR. RIORDAN:  IN REGARD TO?

20        THE COURT:  WAS THERE A TRANSCRIPT OF IT, OR JUST A

21  WRITTEN RECORD?

22        MR. RIORDAN:  ONLY THE WRITTEN RECORD EXISTS.  IN TERMS

23  OF A WRITTEN RECORD NOW, THE WRITTEN PLEA AGREEMENT IS WHAT WE

24  HAVE.

25        THE COURT:  WHAT DOES THE PLEA AGREEMENT SAY ABOUT THE

1  REGISTRATION REQUIREMENT?

2        "MY ATTORNEY HAS EXPLAINED THAT THE MAXIMUM PENALTY,

3  INCLUDING PENALTY ASSESSMENT WHICH COULD BE IMPOSED AS A RESULT

4  OF MY PLEA OF GUILTY OR NOLO CONTENDRE IS ONE YEAR IN THE COUNTY

5  JAIL.  IF A VIOLATION OF PROBATION, THEN A MAXIMUM OF EIGHT

6  YEARS, FOUR YEARS PAROLE, 290.C REGISTRATION, $10,000

7  RESTITUTION FEE, $10,000 FINE, TESTING PER 290.2 P.C.," WHICH

8  IS, AGAIN, THE REGISTRATION PROVISION.  SO IT EXPLICITLY STATES,

9  IT INCORPORATES AS PART OF THE TERM OF MAXIMUM PENALTY OR THE

10 PENALTY BEING IMPOSED, THAT THERE WILL BE 290 P.C. REGISTRATION,

11 AND 290 P.C. REGISTRATION INCLUDES AT THAT TIME A

12 CONFIDENTIALITY AGREEMENT.

13       YOUR HONOR, I SUBMIT, AND WE'RE PREPARED TO PROVE IT AS

14 A MATTER OF FACT, BUT I THINK IT'S VIRTUALLY JUDICIALLY

15 NOTICEABLE THAT ANYONE WHO IS CONVICTED OF A SEX OFFENSE IS

16 GOING TO BE EXTRAORDINARILY -- SPECIALLY THIS PARTICULAR

17 DEFENDANT -- EXTRAORDINARILY CONCERNED ABOUT THE DEGREE TO WHICH

18 THAT BECOMES A MATTER OF PUBLIC DISCUSSION AS A RESULT OF

19 COMMITTING A CRIME.

20       THERE IS THINGS YOU CAN'T PREVENT.  YOU CAN'T PREVENT

21 THERE BEING A COURT RECORD IN THE COUNTY THAT YOU PLEAD GUILTY,

22 BUT YOU CERTAINLY CAN BE AND WERE, IN THIS CASE, TOLD BY YOUR

23 ATTORNEY THAT, YES, YOU HAVE TO REGISTER, BUT THAT REGISTRATION

24 INFORMATION IS NOT AVAILABLE, YOUR ADDRESS ISN'T AVAILABLE, YOUR

25 PICTURE ISN'T AVAILABLE.  ALL OF THOSE THINGS ARE KEPT BY THE

1   STATE AS A CONFIDENTIAL MATTER.

2         AND WE'RE HERE THEN TALKING ABOUT THE -- NOT THE

3   CONSEQUENCE OF THIS OR IF THERE IS FUTURE MISCONDUCT, BUT THE

4   CONSEQUENCE OF THIS IF HE REMAINS A LAW ABIDING CITIZEN; AND THE

5   CONSEQUENCE IS THAT HE WILL HAVE TO REGISTER, HE WILL HAVE TO

6   REGISTER ONCE, AND HE HAS TO REGISTER IF HE MOVES.  BUT HE HAS

7   RECEIVED THE ASSURANCE THAT THAT REGISTRATION INFORMATION IS NOT

8   A MATTER OF PUBLIC RECORD.

9         HE KNOWS THAT IF HE PLEADS GUILTY HE HAS TO PAY

10  CONSEQUENCES.  HE KNOWS IF A PRIVATE DETECTIVE OR SOMEBODY ELSE,

11  AN INVESTIGATIVE JOURNALIST, WANTED TO GO THROUGH THE RECORD OF

12  EVERY COUNTY, THEY MIGHT COME UP WITH SOMETHING, BUT HE ALSO

13  KNOWS -- WELL, LET ME SAY THIS:

14        THE COURT:  I UNDERSTAND ALL THAT, AND I AM VERY

15  SYMPATHETIC TO IT.  I'M SURE THIS WAS A TERRIBLE SURPRISE WHEN

16  THIS LAW WAS CHANGED.  THE ONLY QUESTIONS IN MY MIND IS WHETHER

17  OR NOT THERE IS AUTHORITY AT THIS POINT TO DO ANYTHING ABOUT IT.

18        MR. RIORDAN:  WELL, WE KNOW THAT THE NINTH CIRCUIT IN

19  BUCKLEY HAD SAID, THE STATE IS BOUND TO THE PROVISIONS OF THE

20  DEAL.  IT'S BOUND TO THE PROVISIONS OF THE DEAL EVEN IF THEY'RE

21  ILLEGAL OR IMPROPER.  SO THE COURT RAISED THE QUESTION OF

22  WHETHER IN THE EX POST FACTO CONTEXT THE UNITED STATES SUPREME

23  COURT HAS CONSIDERED REGISTRATION TO BE PUNISHMENT.  OKAY?  BUT

24  WE KNOW FROM THE NINTH CIRCUIT'S OPINION THAT IF A PLEA BARGAIN

25  WERE TO CATEGORIZE THIS AS A PENALTY OR PUNISHMENT, SOMETHING,

1  AND THERE WERE TERMS THAT DEALT WITH THAT, EVEN IF THAT WAS A

2  MISCHARACTERIZATION OF LAW, THE STATE IS BOUND BY ITS AGREEMENT.

3          IN BUCKLEY IT WAS A SITUATION WHERE SOMEBODY SAID,

4  15 YEARS MAXIMUM FOR SECOND DEGREE MURDER, AND IN FACT THE TERM

5  WAS 15 YEARS TO LIFE.  THE COURT SAID, LOOK, THAT'S THE D.A.'S

6  PROBLEM.  HE MADE A BARGAIN FOR 15 TO LIFE.  THAT MAY NOT BE A

7  LEGAL SENTENCE, BUT THAT WAS THE TERM OF THE BARGAIN, AND SHE

8  SERVED THE 15 YEARS.

9          THE COURT:  AT A MINIMUM, YOU'RE SAYING THAT THE

10  12(B)(6) MOTION HAS TO BE DENIED AND WE HAVE TO PROCEED TO

11  RESOLVE THIS AS A MATTER OF FACT IN TERMS OF WHAT THE DEFENDANT

12  ACTUALLY EXPECTED TO GET AT THE TIME HE ENTERED HIS PLEA.

13          MR. RIORDAN:  AND LET ME MAKE WHAT I THINK IS A VERY

14  IMPORTANT POINT IN THAT REGARD.  LET'S TALK ABOUT GIPSON FOR

15  EXAMPLE, OR THE RECENT DISTRICT COURT CASE IN OBERG.  AND THEY

16  STAND FOR THE PROPOSITION THAT A CONTRACT -- A PLEA BARGAIN FOR

17  THE CONSEQUENCES OF PAST CONDUCT CAN'T BAR THE STATE FROM

18  PASSING NEW LAWS THAT ATTRIBUTE NEW CONSEQUENCES, GREATER

19  CONSEQUENCES, TO THAT PAST CONDUCT FOR FUTURE CRIMES.

20          DAVIS VERSUS WOODFORD ACTUALLY DEALT WITH THE SITUATION

21  WHERE YOU WERE TALKING ABOUT THE CONSEQUENCES OF A PLEA ON

22  FUTURE CONDUCT.  IN OTHER WORDS, SOMEONE CAME IN AND SAID, LOOK,

23  I'M UNDER THREE STRIKES NOW AND THEY'RE GIVING ME A THREE

24  STRIKES PENALTY, BUT AT THE TIME I ENTERED MY PLEA TO MULTIPLE

25  FELONIES, THEY TOLD ME EXPRESSLY THAT THEY WOULD ONLY COUNT AS

1  ONE PRIOR IN A FUTURE PROSECUTION.  SO NOW WE ARE TALKING ABOUT

2  THE GIPSON SITUATION.  AND THE NINTH CIRCUIT SAID, EVEN IN THAT

3  SITUATION, EVEN IN THAT SITUATION, AN EXPLICIT PROMISE THAT

4  SOMETHING WILL BE DEALT WITH IN A CERTAIN WAY IF YOU HAVE A NEW

5  CRIME IN THE FUTURE, IT'S STILL BINDING, BECAUSE IT'S A

6  CONTRACTUAL PROVISION OF YOUR PAST PLEA.

7          SO EVEN IN SITUATIONS WE'RE NOT DEALING WITH HERE --

8  THE THREE STRIKES THING, SOMEONE IS COMPLAINING ABOUT GETTING A

9  GREATER PUNISHMENT FOR A PAST ACT EVEN THOUGH THEY COMMITTED A

10 NEW CRIME, THE NINTH CIRCUIT SAID, AN EXPLICIT PROMISE TO TREAT

11 THE PRIORS IN A CERTAIN WAY IN THE FUTURE IS BINDING AND

12 THEY'RE STUCK WITH IT, SO THAT EVEN IF WE WERE DEALING WITH THAT

13 SITUATION, AND WE'RE NOT, DOE WOULD STILL PREVAIL IF THE COURT

14 WERE TO MAKE A FINDING THAT THERE WAS AN EXPLICIT PROMISE,

15 EXPLICIT UNDERSTANDING BETWEEN THE PARTIES AND EXPLICIT PROMISE

16 THAT THE CONFIDENTIALITY PROVISION WOULD BIND IN THE FUTURE.

17 AND THAT IS A QUESTION OF FACT THAT COULDN'T BE RESOLVED ON THIS

18 MOTION TO DISMISS.

19          THE COURT:  DID YOU ATTACH A COPY OF THE COMPLAINT?  DO

20 YOU HAVE A COPY OF THE PLEA BARGAIN TO THE COMPLAINT?

21          MR. RIORDAN:  YES, WE DID, YOUR HONOR.  WELL, IT'S THE

22 DECLARATION OF JOHN DOE IN SUPPORT OF LEAVE TO FILE UNDER A

23 PSEUDONYM.  IT WAS FILED UNDER SEAL.  IN THAT, HE BOTH DISCUSSES

24 THE EXPLICITNESS OF HIS UNDERSTANDING OF -- "ALTHOUGH I

25 UNDERSTAND THAT THE BARE FACT OF MY CONVICTION WOULD REMAIN A

1 PUBLIC RECORD, I ENTERED MY PLEA AGREEMENT WITH THE

2 UNDERSTANDING THAT THE PERSONAL INFORMATION I PROVIDED TO POLICE

3 AS A RESULT OF MY REGISTRATION OBLIGATION, INCLUDING MY NAME,

4 PHOTOGRAPH, HOME ADDRESS, WHICH ARE NOT OTHERWISE AVAILABLE TO

5 THE PUBLIC, WOULD REMAIN CONFIDENTIAL."

6          AND IN ADDITION TO THAT EXHIBIT E IS THE WRITTEN PLEA

7 AGREEMENT.

8          MS. RUFFRA:  EXHIBIT A.

9          MR. RIORDAN:  YES.  EXHIBIT A.  BOTH OF THOSE ARE

10 INCORPORATED BY REFERENCE INTO THE COMPLAINT ITSELF.

11          YOUR HONOR, JUST -- YOU RAISED THE QUESTION OF THE

12 APPLICABILITY OF ARATA.  YOUR HONOR, WE SUBMIT THAT ARATA IS THE

13 ONLY CASE THAT REALLY IS APPLICABLE TO OUR SITUATION.  ARATA AS

14 OPPOSED TO GIPSON OR OBERG, WHICH IS ALSO CITED BY THE

15 GOVERNMENT, BECAUSE ARATA IS A SITUATION, ONE SITUATION OF THESE

16 CASES WE JUST DISCUSSED -- WHERE A COMPLAINT IS MADE ABOUT THE

17 CONSEQUENCE OF A PLEA BARGAIN IN TERMS OF THE CONDUCT, THE CRIME

18 THAT WAS COMMITTED, AS OPPOSED TO THE IMPACT OF THAT ON A FUTURE

19 CRIME COMMITTED AFTER LEGAL REVISION SUCH AS THE THREE STRIKES

20 LAW.

21          THERE SOMEONE PLED GUILTY AT A TIME WHEN HAD THE RIGHT

22 TO HAVE THE CONVICTION REDUCED TO A MISDEMEANOR AND THEIR RECORD

23 SEALED.  THE STATE SUBSEQUENTLY REPEALS THE RIGHT TO THOSE AND

24 THEY ARGUE THAT THEY ARE ENTITLED TO THOSE PROTECTIONS EVEN

25 THOUGH THE STATE SUBSEQUENTLY REPEALED THE RIGHT TO HAVE THE

1  CONVICTION REDUCED TO A MISDEMEANOR AND SEALED; AND THE STATE

2  COURT HOLDS THAT -- EXCLUSIVELY DEALS WITH THE ARGUMENT THAT THE

3  ATTORNEY GENERAL SAYS THAT THAT WAS NOT PART OF THE PLEA

4  BARGAIN, AND THE COURT FINDS THAT IT WAS A PART OF THE LAW AT

5  THE TIME.  IT CERTAINLY WAS IMPLICIT IN SUCH A PLEA BARGAIN.

6  IMPLICIT IN SUCH A PLEA BARGAIN WITH THE UNDERSTANDING THERE

7  WOULD BE NO ADVERSE CONSEQUENCES BASED ON UNRELATED DISMISSED

8  COUNTS.  THEY GO ON TO HOLD THIS WAS AN IMPLICIT PART OF THE

9  PLEA BARGAIN AND THE STATE IS BOUND TO IT EVEN THOUGH THERE WAS

10  A CHANGE IN FUTURE LAW.  THIS IS THE ONE SITUATION WHERE THEY'RE

11  TAKING ABOUT THE CONSEQUENCE OF A CHANGE IN THE CONSEQUENCES FOR

12  PAST CONDUCT AND SAYING THAT YOU CAN'T DO THAT.

13           IF YOU LOOK AT GIPSON, AND I WOULD REFER THE COURT TO

14  THIS LANGUAGE IN GIPSON.  WE'RE NOW TAKING ABOUT A CITATION TO

15  PAGE -- I BELIEVE IT'S 482 OF THE STATE COURT OPINION, AND

16  117 CAL.APP.4TH -- GOT DOUBLE NUMBERING SYSTEMS  -- ONE CAL.APP

17  AT 1070.  AND THEY'RE DISCUSSING, AGAIN, HIS CLAIM THAT HE

18  CANNOT BE GIVEN A GREATER PENALTY BECAUSE THE PENALTY FOR PRIOR

19  OFFENSES WAS FIVE YEARS, I BELIEVE, AT THE TIME THAT HE ENTERED

20  INTO HIS PLEA.  THE 1994 AMENDMENT TO SECTION 667, THE THREE

21  STRIKES LAW, DID NOT AFFECT THE 1992 PLEA BARGAIN.  IT DID NOT

22  CREATE OR DESTROY ANY SUBSTANTIVE RIGHTS DEFENDANT HAD IN THE

23  PLEA BARGAIN.  SUBSEQUENT TO THE PLEA BARGAIN, THE LEGISLATURE

24  AMENDED THE LAW.  DEFENDANT COMMITTED ANOTHER CRIME.  DEFENDANT

25  BECAME SUBJECT TO THE PENALTY DESCRIBED IN THE AMENDED STATUTE.

1    THE INCREASED PENALTY IN THE CURRENT CASE HAD NOTHING TO DO WITH

2    THE PREVIOUS CASE EXCEPT THAT THE EXISTENCE OF THE PREVIOUS CASE

3    BROUGHT DEFENDANT WITHIN THE DESCRIPTION OF PERSONS ELIGIBLE FOR

4    A FIVE-YEAR ENHANCEMENT FOR HIS PRIOR CONVICTION ON CHARGES

5    BROUGHT AND TRIED SEPARATELY.

6         WHAT THEY'RE ESSENTIALLY SAYING IS HE IS GETTING HIS

7    PENALTY BECAUSE OF A LAW PASSED BEFORE HE COMMITTED THIS NEW

8    CRIME, AND NOTHING ABOUT HIS PENALTY ON THE NEW CRIME AFFECTS

9    THE RIGHTS THAT HE RECEIVED UNDER THE ORIGINAL PLEA BARGAIN.

10   UNDER THE ORIGINAL PLEA BARGAIN THERE WAS A PROMISE OF

11   CONFIDENTIALITY.  THE NEW LAW IS CHANGING THE PROVISIONS OF THE

12   ORIGINAL PLEA BARGAIN AND CHANGING THE CONSEQUENCES OF PAST

13   CONDUCT, WHICH IS SOMETHING THAT IS NOT AT STAKE IN GIPSON, NOT

14   AT STAKE IN OBERG.  IT'S AT STAKE IN ARATA.  THAT IS THE

15   APPROPRIATE ANALOGY, AND THAT'S WHY WE BELIEVE THAT ARATA IS THE

16   CASE THAT MOST CLEARLY -- AND BUCKLEY.

17        THE COURT:  I THINK IT'S CLOSE.  I ALSO THINK THAT IT'S

18   PROBABLY DISTINGUISHABLE IN THE SENSE THAT THERE IS NO QUESTION

19   BUT WHAT HE IS PLEADING, ESSENTIALLY, TO A MISDEMEANOR SENTENCE

20   WHICH WOULD TRIGGER THE 1203.4 RELIEF, AT LEAST AS IT EXISTED AT

21   THAT TIME.  SO THERE IS A WAY AROUND IT.

22        IN ANY EVENT, YOU SEEM TO BE SQUARELY IN THE DOMAIN OF

23   STATE LAW AND I'M WONDERING IF YOU HAVE ANY VIEWS ABOUT WHETHER

24   OR NOT THIS IS AN ISSUE -- THE ISSUE THAT YOU'RE RAISING IN THIS

25   CASE SHOULD BE CERTIFIED TO THE CALIFORNIA SUPREME COURT.

1          MS. RUFFRA:  YOUR HONOR, THE ISSUE ACTUALLY IS PENDING

2     IN THE CALIFORNIA SUPREME COURT.

3          THE COURT:  IS IT STILL?  I INTENDED TO ASK YOU ABOUT

4     THAT.

5          MS. RUFFRA:  I'M NOT POSITIVE.  AS OF THE TIME THAT I

6     FILED THAT BRIEF, I WAS AWARE OF THAT CASE.

7          THE COURT:  AFTER A LONG SEARCH, WE MANAGED TO GET

8     SOMETHING OFF THE INTERNET ON IT; AND THIS IS THE PETITION OF

9     GERALD C. WADE WHICH SHOWS, AT LEAST ON THIS PRINTOUT, THAT AS

10    OF OCTOBER 17, 2007 THE PETITION WAS DENIED.

11         MS. RUFFRA:  THAT MAY BE.  I HAVE NOT DONE A FURTHER

12    CHECK OF ANY SUBSEQUENT ACTION.  IF IT WAS SUMMARILY DENIED,

13    THEN THE CALIFORNIA SUPREME COURT WON'T HAVE A RECENT OPINION ON

14    IT.

15         THE COURT:  THAT'S RIGHT.

16         WHAT ARE YOUR THOUGHTS ON THAT?

17         MR. RIORDAN:  WELL, THEY ARE THIS, YOUR HONOR:

18    THAT -- WHAT I THINK WE HAVE DONE HERE IS CLARIFY THERE IS TWO

19    POSSIBLE PRONGS IN TERMS OF THE WAY THIS CASE IS DECIDED.  ONE

20    OF THEM IS THAT IF WE ARE CORRECT, AND I THINK WE ARE, THAT THE

21    GIPSON LINE OF CASES DEALS WITH ATTEMPTS TO CHALLENGE THE

22    CONSEQUENCES OF FUTURE CONDUCT ON A PAST PLEA BARGAIN AND,

23    THEREFORE, REALLY AREN'T RELEVANT, THEN THE QUESTIONS IS, DID

24    THE EXISTENCE OF THE CONFIDENTIALITY PROVISION IN 290 AT THE

25    TIME, WAS THAT READ INTO THE PLEA BARGAIN AS UNDER STATE LAW

1  THAT SAYS THAT YOU READ INTO EXISTING LAW.

2       THE COURT:  THERE IS THE THRESHOLD QUESTION, TOO.  ANY

3  CONTRACT WOULD BE INTERPRETED IN THE CONTEXT OF STATE LAW.

4       MR. RIORDAN:  RIGHT.

5       THE COURT:  SO THE QUESTION WHICH COULD POTENTIALLY BE

6  CERTIFIED TO THE SUPREME COURT WOULD BE, IS THIS A MATTER OF

7  CONTRACT LAW.

8       MR. RIORDAN:  YES.  LET ME JUST CLARIFY WHAT I WANTED

9  TO SAY ABOUT THAT.

10       SO WE'RE RELYING ON CASES, STATE LAW CASES.  THE NINTH

11  CIRCUIT HAS SAID THAT WHEN YOU'RE DEALING WITH A CONTRACT, WHEN

12  YOU ARE DEALING WITH A PLEA BARGAIN, YOU READ IT IN VIEW OF

13  STATE LAW CONTRACT PROVISIONS AND, THEREFORE, THE NINTH CIRCUIT

14  HAS RELIED ON CALIFORNIA STATE LAW ON THE QUESTION OF WHETHER A

15  STATUTE LIKE THIS IS READ INTO A CONTRACT BECAUSE IT EXISTED AT

16  THE TIME.  SO THAT'S ONE QUESTION, AND IT'S A SORT OF STATE LAW

17  DEPENDENT QUESTION.

18       BUT THERE IS ANOTHER PRONG OF THIS CASE, WHICH IS THAT

19  UNDER NINTH CIRCUIT LAW, PUTTING ASIDE CONTRACTS LAW AND ITS

20  IMPLICIT PRESENCE IN A PLEA BARGAIN, HAS SAID, IF THERE IS AN

21  EXPLICIT PROMISE, EVEN IN THE GIPSON SITUATION, IF THERE IS AN

22  EXPLICIT PROMISE, THEN THAT IS BINDING.  YOU DON'T GO TO --

23       THE COURT:  YOU DON'T HAVE ANY EVIDENCE OF AN EXPLICIT

24  PROMISE HERE.  YOU HAVE AN INVOCATION OF THE STATUTE AS IT

25  EXISTED AT THAT TIME, AND THEN YOU IMPORT THE LANGUAGE OF THE

1 STATUTE INTO IT.  THERE IS NOTHING ON THE RECORD, AT LEAST SO

2 FAR -- AND THIS BEGS THE QUESTIONS ONCE AGAIN OF WHETHER WE NEED

3 TO PROCEEDED BEYOND RULE 12(B)(6).  THERE IS NOTHING IN THE

4 RECORD SO FAR IN TERMS OF THE ATTACHMENTS TO THE COMPLAINT THAT

5 EXPLICITLY PROMISES HIM THAT THIS INFORMATION IS GOING TO REMAIN

6 CONFIDENTIAL.

7        MR. RIORDAN:  WELL, YOUR HONOR, I BEG TO DIFFER IN THIS

8 SENSE.  IF THE COURT IS SAYING THAT YOU HAVE NOT YET ESTABLISHED

9 TO THE COURT'S SATISFACTION THE EXISTENCE OR PROOF OF AN

10 EXPLICIT PROMISE, I WON'T QUIBBLE WITH THAT.  ALL I WOULD SAY IS

11 IT'S A 12(B)(6), SO WE AREN'T THERE YET.

12        THE COURT:  ALTHOUGH THE TEST SEEMS TO BE IN TERMS OF

13 WHETHER OR NOT THERE WAS A REASONABLE RELIANCE ON AN EXPECTATION

14 WHICH IS SUBSEQUENTLY EXPRESSED.  IT'S ALMOST A MATTER OF LAW.

15        MR. RIORDAN:  WELL, YOUR HONOR, I SUBMIT THAT IF THE

16 STATE WERE CONTENDING THAT THE DOCUMENTS BEFORE THE COURT ARE

17 INSUFFICIENT TO RAISE A  --

18        THE COURT:  WELL, THAT MAY BE ONE THING, BUT THE STATE

19 WILL OBVIOUSLY CONTEND THAT THERE WAS NO REASONABLE EXPECTATION

20 BY MR. DOE AT THE TIME THAT HE ENTERED HIS PLEA, THAT THERE

21 WOULD BE NO CHANGE WITH RESPECT TO THIS PARTICULAR PART OF THE

22 LAW.  BASICALLY HE GOT A GOOD DEAL BECAUSE HE GOT A MISDEMEANOR

23 SENTENCE, AND HOPE FOR THE BEST.  SO THEN SEVERAL YEARS DOWN THE

24 LINE WE HAVE, OUT OF THE BLUE, THIS CHANGE IN A, QUOTE, CIVIL

25 REGULATORY SCHEME, AS IT'S BEEN ENUNCIATED BY THE U.S. SUPREME

1    COURT.

2          MR. RIORDAN:  BUT THE DECLARATION OF JOHN DOE AT PAGE

3    3, IN 1991 CAL FED CODE 290 PROVIDED -- "FOLLOWING MY CONVICTION

4    I WAS REQUIRED TO REGISTER WITH LAW ENFORCEMENT OFFICIALS BY

5    PROVIDING CERTAIN INFORMATION INCLUDING MY NAME, PHOTOGRAPH, AND

6    HOME ADDRESS.  I WAS REQUIRED TO UPDATE THIS INFORMATION IF I

7    CHANGED ADDRESSES, AND ALL THAT INFORMATION I FURNISHED AS A

8    RESULT OF MY REGISTRATION WOULD REMAIN CONFIDENTIAL. THESE RULES

9    WERE CAREFULLY EXPLAINED TO ME AT THE TIME OF MY PLEA.  I

10   UNDERSTOOD THAT THE RULES PROVIDED IN CALIFORNIA PENAL CODE

11   SECTION 290 AT THE TIME OF MY PLEA CONSTITUTED THE COMPLETE

12   TERMS OF MY REGISTRATION OBLIGATION AS A RESULT MY PLEA

13   AGREEMENT.  I CONSIDERED THIS OBLIGATION ONEROUS, BUT AGREED TO

14   ABIDE BY THE TERMS.  I DID NOT ANTICIPATE THE RULES WOULD CHANGE

15   OVER TIME.  IN PARTICULAR, I COULD NOT HAVE IMAGINED THAT MY

16   SUPPOSEDLY CONFIDENTIAL INFORMATION WOULD BE PUBLISHED ON A

17   PUBLICLY AVAILABLE ELECTRONIC FILE SHARING NETWORK INSTANTLY

18   AVAILABLE TO ALMOST ANY PERSON WITH A COMPUTER WORLDWIDE."

19          THE COURT:  HE DOESN'T SAY, IF I HAD KNOWN THAT, I

20   WOULDN'T HAVE PLED GUILTY.

21          MR. RIORDAN:  YOUR HONOR, WHAT THE STATE WOULD HAVE TO

22   SAY IN THIS REGARD IS THAT A -- THAT HAD -- THAT ON THE RECORD

23   THIS COURT CAN MAKE A FINDING THAT HAD THE DEFENDANT BEEN TOLD

24   THAT AS OPPOSED TO HIS INFORMATION REMAINING CONFIDENTIAL, IT

25   COULD BECOME AVAILABLE TO ANYBODY IN THE WORLD INSTANTLY, THAT

1    THAT WOULD NOT HAVE AFFECTED HIS DECISION TO ENTER INTO THIS

2    PLEA BARGAIN.  AND, YOUR HONOR, I SUBMIT THAT YOU CAN'T POSSIBLY

3    MAKE THAT FINDING ON A 12(B)(6) MOTION HERE IN THE FACE OF THIS

4    DECLARATION.

5            THE COURT:  ALL RIGHT.  MISS RUFFRA.

6            MS. RUFFRA:  IT'S OUR POSITION THAT THE ISSUES

7    PRESENTED BY THIS REQUEST FOR INJUNCTIVE RELIEF ARE PURELY LEGAL

8    ISSUES THAT CAN BE DECIDED IN A 12(B)6.  THE FIRST ISSUE IS

9    WHETHER THE PLEA AGREEMENT IN FACT CONTAINED A PROMISE, EXPRESS

10   OR IMPLIED, THAT THE SEX OFFENDER REGISTRATION REQUIREMENT BE

11   FROZEN IN TIME AS IT WAS IN '91.  THAT IS JUST OBJECTIVELY.

12           WE GO BACK TO CALIFORNIA CONTRACT LAW.  CALIFORNIA

13   CONTRACT LAW SAID THAT IS JUDGED OBJECTIVELY.  YOU FIRST LOOK AT

14   THE PLAIN MEANING OF THE LANGUAGE.  AND THERE IS SIMPLY NOTHING,

15   NOTHING IN THAT PLEA AGREEMENT THAT SUGGESTS THAT THERE WAS SOME

16   KIND OF EXPRESS OR IMPLIED PROMISE.  IT'S A RUN OF THE MILL,

17   WRITTEN PLEA AGREEMENT.

18           IT SAYS, "I WAS ADVISED THAT THE MAXIMUM PENALTY IS

19   X, Y, Z AND 290 P.C. REGISTRATION."  SO YOU'RE LOOKING AT THE

20   PLAIN MEANING OF THAT LANGUAGE.  THERE IS NOTHING IN IT TO

21   SUGGEST -- CERTAINLY NO EXPRESS PROMISE, BUT NO IMPLIED PROMISE

22   THAT IT WOULD BE FROZEN IN TIME.  EVEN IF YOU GOT BY THE PLAIN

23   LANGUAGE REQUIREMENT, THEN UNDER CALIFORNIA CONTRACT LAW, YOU

24   LOOK TO SEE IF IT WAS AN OBJECTIVELY REASONABLE EXPECTATION OF

25   THE PROMISE.

1          SO, AGAIN, YOU DON'T NEED ANY DECLARATION FROM

2    MR. DOE.  IT'S JUDGED OBJECTIVELY.  AND LOOKING AT THIS, IT

3    WOULDN'T BE REASONABLE TO BELIEVE THAT THERE WAS SOME KIND OF

4    PROMISE AS A TERM OF THE PLEA AGREEMENT THAT YOU'RE NEVER GOING

5    TO HAVE THIS CHANGED, THIS IS IT, AND WHATEVER THE LEGISLATURE

6    DOES, YOU'RE NOT GOING TO BE SUBJECT TO IT.  IT'S JUST NOT

7    THERE.  AND IF THAT IS THE CASE, THEN THERE IS NO VIOLATION OF

8    THE PLEA AGREEMENT AS A MATTER OF LAW, BECAUSE IT WASN'T A TERM

9    OF THE PLEA AGREEMENT; SO YOU DON'T NEED ANY TESTIMONY TO MAKE

10   THAT KIND OF LEGAL RESOLUTION.

11         NOW, THE SECOND QUESTION IS, DOES CALIFORNIA CONTRACT

12   LAW IN FACT PERMIT RETRO-APPLICATION OF CHANGES IN THE LAW.  AND

13   OUR ANSWER IS, YES.  WE DO RELY PRIMARILY -- I HAVE BEEN

14   PRONOUNCING IT GIPSON.  IS IT GIBSON OR GIPSON?  IT SAYS,

15   "CONTRACTS ARE DEEMED TO INCORPORATE AND CONTEMPLATE NOT ONLY

16   THE EXISTING LAW, BUT THE RESERVE POWER OF THE STATE TO AMEND

17   THE LAW OR ENACT ADDITIONAL LAWS".

18         THE COURT:  DO YOU HAVE ANY IDEA WHAT THE POLICY

19   UNDERLYING THAT PRONOUNCEMENT IS?

20         AS A MATTER OF JUST PURE FAIRNESS, WHY SHOULD THAT BE

21   TRUE?

22         MS. RUFFRA:  WELL, I THINK THE REMAINDER OF THAT QUOTE

23   IS -- I THINK I STOPPED BEFORE THE FULL SENTENCE.  "TO AMEND THE

24   LAW OR ENACT ADDITIONAL LAWS FOR THE PUBLIC GOOD AND IN

25   PURSUANCE OF PUBLIC POLICY."  THAT IS THE REASON.

1            THE COURT:  SO THE PUBLIC POLICY HERE, THEN, IS --

2            MS. RUFFRA:  WELL, ALL OF THOSE, YES.

3            THE COURT:  SUPPOSEDLY TO PROTECT THE PUBLIC FROM

4    PEOPLE WHO HAVE SUFFERED CONVICTIONS FOR SEX OFFENSES.

5            MS. RUFFRA:  YES.

6            THE COURT:  EVEN THOUGH THIS PARTICULAR CASE INVOLVED A

7    DETERMINATION BY ALL PARTIES, INCLUDING THE ORIGINAL PROSECUTOR,

8    THAT IT ESSENTIALLY WAS A MISDEMEANOR, WHICH WOULD CREATE

9    CERTAIN IMPLICATIONS ABOUT WHETHER OR NOT A PERSON SHOULD BE

10   OPENED UP FOR THIS KIND OF EXPOSURE FOR THE REST OF HIS LIFE.

11           MS. RUFFRA:  THE STATUTE ARTICULATES THE TYPES OF

12   CRIMES THAT REQUIRE REGISTRATION.  EVEN BACK IN 1991, THIS WAS

13   THE KIND OF OFFENSE THAT REQUIRED REGISTRATION AND, OF COURSE,

14   HE WAS ABLE TO GET THAT KIND OF DISPOSITION BECAUSE OF THE PLEA

15   BARGAIN.  THERE WERE FIVE OTHER COUNTS OF CHILD MOLESTATION OUT

16   THERE.  IF HE HAD GONE TO TRIAL, HE WOULD BE FACING A VERY

17   SUBSTANTIAL PRISON SENTENCE.

18           BUT BACK TO THE POINT OF WHAT IS CALIFORNIA CONTRACT

19   LAW.  YOU SUGGESTED THE THOUGHT OF CERTIFYING THIS TO THE

20   CALIFORNIA SUPREME COURT.  THAT IS CERTAINLY A POSSIBILITY, BUT

21   I DON'T THINK IT'S NECESSARY HERE, BECAUSE I THINK WHEN YOU

22   ACTUALLY LOOK AT THE BODY OF CASE LAW, THEN IT'S VERY CLEAR THAT

23   THAT IS THE LAW IN CALIFORNIA, THAT YOU CAN RETROACTIVELY APPLY

24   CHANGES IN THE LAW.

25           THE ONLY CASE THAT THE PLAINTIFF HAS RELIED ON IS THIS

1  1970 CONTRACT DISPUTE CASE, WHICH CERTAINLY HAS NOTHING TO DO

2  WITH THIS KIND OF CASE.  IT'S AN OLD CASE THAT HAS TO DO WITH A

3  BUSINESS PARTNERSHIP BEING DISSOLVED.  BUT IF YOU LOOK AT THE

4  GIPSON LINE OF CASES, THOSE DO RELATE SPECIFICALLY TO THESE

5  KINDS OF CASES; AND THERE ARE IN FACT FIVE CASES FROM THE STATE

6  AND FEDERAL COURT INTERPRETING THIS KIND OF CONDUCT, AND THEY'RE

7  NOT ALL INVOLVING THE THREE STRIKES CONTEXT WHERE THERE IS

8  ACTUALLY A SUBSEQUENT CRIME AND THEN ADDITIONAL PUNISHMENT,

9  ALTHOUGH I SEE NO REASON WHY THOSE CASES AREN'T CONTROLLING AS

10 WELL.

11        NOW, THOSE FIVE CASES -- I HAVE ONE MORE THAT I JUST

12 FOUND LAST NIGHT IN THE EVENING.  I HAVE PROVIDED IT TO MR.

13 RIORDAN.  THIS IS THE COURT COPY.  I MARKED THE SPECIFIC PAGE

14 WHERE THE RELEVANT LAW IS, BECAUSE IT'S LENGTHY.  BUT I WOULD

15 SAY SIX CASES, BECAUSE THERE IS GIPSON ITSELF  -- G-I-P-S-O-N --

16 WHICH IS WHY WE HAVE DIFFICULTY.

17        GIPSON WAS A CASE WHERE THE DEFENDANT HAD PLED GUILTY

18 BACK BEFORE THE THREE STRIKE LAW WAS PASSED, AND AT THAT POINT

19 THAT PLEA TO THAT CASE COULD CREATE A CONVICTION FOR SENTENCE

20 ENHANCEMENT OF FIVE YEARS.

21        NOW, THAT PLEA AGREEMENT SPECIFICALLY REFERENCED PENAL

22 CODE SECTION 665, WHICH WAS THE FIVE-YEAR ENHANCEMENTS STATUTE;

23 SO JUST LIKE THIS CASE WHERE IT SAID P.C. 290 SO EVERYBODY KNEW

24 THAT WAS THE LAW AT THE TIME, AND THEN THE LAW CHANGED IT

25 BECAUSE OF THE THREE STRIKES LAW, AND SUDDENLY HE HAD A MUCH

1  GREATER LIABILITY.  THE CALIFORNIA COURT SAID THERE WAS NO

2  PROBLEM WITH THAT.

3       THE COURT:  THE CRITICAL DISTINCTION THERE, WHICH I

4  THINK IS NOT IN THIS CASE, IS THAT WHAT WOULD HAPPEN IN A FUTURE

5  CASE WAS PREDICATED ON FUTURE CONDUCT.  WE DON'T HAVE THAT

6  SITUATION HERE.  MR. DOE HASN'T DONE ANYTHING TO DESERVE THIS.

7       MS. RUFFRA:  IT WENT BACK TO THE ORIGINAL PLEA

8  AGREEMENT, NOT THE FUTURE CONDUCT.

9       THE COURT:  I UNDERSTAND.

10      MS. RUFFRA:  HE WAS REFERRING BACK TO THAT ORIGINAL

11  PLEA AGREEMENT.

12      THE COURT:  MY PROBLEM WITH THE WHOLE CASE IS THERE IS

13  NOTHING IN FEDERAL LAW OR STATE LAW THAT, IN MY OPINION, IS

14  DIRECTLY ON POINT, AND YOU'RE OBVIOUSLY HEADED UP THE LADDER.  I

15  AM AT THE BOTTOM RUNG.  THE QUESTION IS, WHICH WAY DO I GO?

16      MS. RUFFRA:  I AGREE THERE IS NOTHING EXACTLY ON POINT,

17  BUT I THINK THERE ARE SOME VERY CLOSE CASES.  FIRST, IN THE

18  STATE LAW, THERE IS GIPSON, AND THEN ACUNA, WHICH IS CITED IN

19  OUR PAPERS.  PEOPLE VERSUS ARATA.  PEOPLE VERSUS ACUNA WAS NOT A

20  CASE WHERE THERE WAS SOME KIND OF FUTURE CRIME.  THAT WAS A CASE

21  THAT WAS JUST THE ORIGINAL PLEA BARGAIN PROVIDED THAT THAT CRIME

22  COULD SUBSEQUENTLY BE EXPUNGED IF YOU COMPLETED ALL YOUR

23  PROBATION OR PAROLE SUCCESSFULLY.  LATER, THAT LAW WAS CHANGED

24  TO DISALLOW EXPERIMENT OF THAT PARTICULAR CRIME, AND IT WAS

25  SPECIFICALLY RAISED IN THE CALIFORNIA COURTS AS A VIOLATION OF

1  THE PLEA BARGAIN; AND THEY SAID, NO, WE CAN APPLY THIS NEW LAW

2  BECAUSE THE CONTRACT CLAUSE -- SORRY -- CONTRACTS ARE DEEMED TO

3  INCORPORATE NEW CHANGES IN THE LAW, AND THEY SAID THAT THERE WAS

4  NO EXPRESS OR IMPLIED TERM OF THAT PLEA BARGAIN THAT SUGGESTED

5  THAT THERE WAS A PROMISE THAT YOU COULD BE SUBJECT TO

6  EXPUNGEMENT.  SO IN THE ABSENCE OF SOME KIND OF PROMISE, THEN

7  THE LAW TOOK EFFECT.

8        NOW, ARATA WAS A VERY SIMILAR CASE, THE SAME ISSUE.  IN

9  THAT CASE, THEY WERE ABLE TO FIND UNDER THE UNUSUAL

10  CIRCUMSTANCES OF THAT PARTICULAR CASE, THERE WAS AN IMPLIED

11  PROMISE THAT HE WOULD BE ALLOWED TO GET EXPUNGEMENT AT THAT TIME

12  BECAUSE AT THE TIME OF THE PLEA THEY SAID, THIS IS NOT A STATE

13  PRISON CASE.  SO YOU HAVE TO GO BACK AND SEE WHAT THE TERMS OF

14  THE PLEA BARGAIN ARE.  UNLESS YOU HAVE SOME KIND OF PROMISE,

15  THEN THE RETROACTIVE APPLICATION OF LAW IS GOING TO TAKE EFFECT.

16        THE COURT:  WHAT WERE THE PROCEDURAL CONTEXT OF ACUNA

17  AND ARATA?  WERE THOSE APPEALS FROM SOME SORT OF CRIMINAL

18  ACTION?

19        MS. RUFFRA:  YES.

20        THE COURT:  SO THAT'S DIFFERENT FROM WHAT WE'VE GOT

21  HERE ALSO.  IN ESSENCE, THE STATE COURT OF APPEAL IN BOTH

22  CASES -- ESSENTIALLY, THEY RESOLVED THE FACTUAL ISSUE

23  AGAINST -- WELL, ONE IN FAVOR OF THE DEFENDANT, AND ONE AGAINST

24  THE DEFENDANT.

25        MS. RUFFRA:  WELL, TRUE, BUT FOR THE SECOND QUESTION

1   THAT I RAISED, WHICH IS WHAT IS CALIFORNIA LAW, THEN BOTH OF

2   THESE CASES CLEARLY SAY THAT CALIFORNIA LAW SAYS THAT THE

3   CONTRACT PROVISION IN CALIFORNIA ALLOWS RETRO-APPLICATION OF A

4   CHANGE IN THE LAW.  THEN WE GO TO THE FEDERAL COURTS, AND ALL OF

5   THE CASES I'M GOING TO CITE, AGAIN, LOOK AT CALIFORNIA LAW

6   BECAUSE THEY ALL AGREE THAT THIS HAS TO BE INTERPRETED UNDER THE

7   STATE CONTRACT LAW.  SO THESE ARE ALL CASES THAT TURN ON WHAT IS

8   CALIFORNIA LAW.

9         THE NINTH CIRCUIT CASE IS DAVIS VERUS WOODFORD, 2006

10  CASE FROM THE NINTH CIRCUIT.  IT SPECIFICALLY ACKNOWLEDGED THE

11  GIPSON RULE AND CITED THAT LANGUAGE THAT I CITED TO THE COURT IN

12  A VIOLATION OF PLEA BARGAIN CASE.  IT SAID, THAT IS THE LAW IN

13  CALIFORNIA.

14        NOW, IN THAT CASE IT WENT BACK TO THE TIME OF THE PLEA,

15  AND THE PROSECUTOR EXPRESSLY SAID, YOU'RE PLEADING GUILTY TO

16  EIGHT CONVICTIONS, BUT IT'S ONLY GOING TO COUNT AS ONE FOR ALL

17  PURPOSES.  SO WE COULDN'T HAVE A CLEARER EXPRESS PROMISE ON THE

18  RECORD THAT THAT WAS THE TERM OF THE PLEA AGREEMENT.

19  THEN AFTER THE THREE STRIKES LAW WAS PASSED, IT COULDN'T BE USED

20  FOR MORE THAN ONE STRIKE.  IT COULD ONLY BE USED FOR ONE STRIKE.

21        THEN THERE IS THE 2007 DISTRICT COURT CASE, SEILER

22  VERSUS BROWN, JUDGE HAMILTON.  AGAIN, THAT IS NOT A CASE

23  INVOLVING SOME FUTURE CRIMINAL CONDUCT.  THAT IS A CASE THAT

24  ACKNOWLEDGED THE GIPSON RULE IN A VIOLATION OF PLEA BARGAIN

25  CASE.  IT WAS ONE WHERE THE DEFENDANT PLED GUILTY, AND AT THAT

1  TIME THE BOARD OF PRISON TERMS WAS THE BODY THAT DECIDED WHETHER

2  HE WOULD GET PAROLE OR NOT.  SUBSEQUENTLY, THE LAW CHANGED AND

3  GAVE THE GOVERNOR THE FINAL AUTHORITY TO MAKE THAT DECISION; AND

4  SEILER CLAIMS THAT HE HAD A VESTED RIGHT AT THE TIME OF HIS PLEA

5  BARGAIN TO HAVE THE BOARD OF PRISON TERMS BE THE DECIDING BODY.

6  JUDGE HAMILTON SAID, NO, UNDER THE GIPSON RULE, THE STATE CAN

7  CHANGE THAT LAW; SO YOU'RE BOUND BY THE CHANGE IN THE LAW AND

8  THE GOVERNOR IS THE FINAL ARBITER.

9          THE COURT:  THAT ARGUABLY IS JUST A PROCEDURAL CHANGE.

10         MS. RUFFRA:  WELL, IT WASN'T A PROCEDURAL CHANGE TO

11  MR. SIELER, BECAUSE THE BOARD OF PRISON TERMS HAD RECOMMENDED

12  THAT HE BE PAROLED, AND THE GOVERNOR SAID NO.

13         AND THEN THE OTHER TWO FEDERAL CASES, OBERG VERSUS

14  CARRY, JUDGE HAMILTON, 2007 DECISION, AND BURLESON VERSUS KERN,

15  THE CASE I JUST GAVE YOU, WHICH WAS JUDGE ILLSTON, 2007 DECISION

16  FROM NOVEMBER.  THOSE TWO ARE VERY SIMILAR.  THEY ARE BOTH CASES

17  WHERE AT THE TIME OF THE PLEA IT WAS JUST THE FIVE-YEAR PRIOR

18  AND THEN THE NEW STRIKES LAW TOOK EFFECT, SO THAT CONVICTION WAS

19  USED FOR A MUCH GREATER ENHANCEMENT.

20         IN BOTH CASES THEY WERE CLAIMING A VIOLATION OF THE

21  PLEA BARGAIN.  THE FEDERAL COURTS EXPLICITLY ACKNOWLEDGED THE

22  GIPSON RULE WOULD CONTROL AND HELD THAT THE RETROACTIVE CHANGE

23  COULD TAKE EFFECT.

24         SO YOU HAVE THIS LARGE BODY OF STATE AND FEDERAL LAW

25  SAYING THAT THAT'S THE WAY YOU ANALYZE IT.  AND, REALLY, ON THE

1  OTHER SIDE THERE IS THIS 1970 CASE IN A TOTALLY DIFFERENT

2  CONTEXT.  SO I THINK THE COURT CAN CONCLUDE WITH CONFIDENCE IN

3  THE CONTEXT OF A 12(B)(6) MOTION, THAT THAT IS THE STATE OF THE

4  LAW IN CALIFORNIA.

5       THE COURT:  WELL, ONE CAN'T GRANT A 12(B)(6) MOTION

6  WITH ANY DEGREE OF CONFIDENCE IN THIS CIRCUIT.

7       MR. RIORDAN, ANY REPLY?

8       MR. RIORDAN:  YOUR HONOR, YOU HAVE BEEN CANDID.  THIS

9  IS GOING UP.  IT IS TRUE, CERTAINLY TRUE, THAT NO COURT HAS

10  ADDRESSED THE QUESTION NOW BEFORE THIS COURT, AND THE COURT

11  FACES THIS CONTRADICTION THAT THE GOVERNMENT ATTEMPTS TO GLOSS

12  OVER.  SWENSON VERSUS KYLE(PHONETIC) SAYS THAT THE RULE IN

13  CALIFORNIA, THE GENERAL RULE, IS THAT INCORPORATES INTO CONTRACT

14  EXISTING, BUT NOT SUBSEQUENT LAW.  AND THE CONTRACT CLAUSE

15  PROVISION EMPHASIZES THAT PRESENT LAW IS INCORPORATED INTO THE

16  CONTRACT; SUBSEQUENT LAW IS NOT.

17       THEN THIS COURT HAS THIS TO DEAL WITH.  NOW WE'RE

18  TALKING ABOUT THE NINTH CIRCUIT, THE ONE COURT THAT WILL REVIEW

19  THIS COURT'S DECISION.  IT'S THE GOVERNMENT, NOT AN INDIVIDUAL

20  CRIMINAL DEFENDANT, WHO'S THE REPEAT PLAYER IN THE PLEA

21  BARGAINING PROCESS, BECAUSE ALL PLEA AGREEMENTS ARE NEGOTIATED

22  AGAINST THE BACKDROP THAT THE LAW CAN CHANGE BY WAY OF JUDICIAL

23  INTERPRETATION.  THE PROSECUTION KNEW OR SHOULD HAVE KNOWN THAT

24  COMPARABLE CHANGES IN THE LAW OCCUR FROM TIME TO TIME.  THE

25  FAILURE OF THE GOVERNMENT TO ANTICIPATE A DEVELOPMENT IN THE

1  SUBSTANCE OF THE LAW, OR FOR ANY OTHER REASON, IS THUS A FAILURE

2  TO COVER A PREDICTABLE CONTINGENCY.

3       THEY HAVE SAID, "IF THE PROSECUTION -- I QUOTE -- "THE

4  PROSECUTION BEARS THE RISK OF ANY CHANGE IN THE RELEVANT

5  SUBSTANTIVE LAW THAT MAY AFFECT THE PARTIES' OBLIGATIONS UNDER A

6  PLEA AGREEMENT".  THAT'S UNITED STATES VERSUS TRANSFIGURATION.

7  ADMITTEDLY, THE COURT HAS THIS ISSUE.  ON THE ONE HAND WE'VE GOT

8  THEIR CLEAR STATEMENTS OF CONTRACT LAW THAT SAY THAT PRESENT LAW

9  IS INCORPORATED, FUTURE LAW IS NOT.  WE'VE GOT A CLEAR NINTH

10  CIRCUIT STATEMENT THAT IF THE GOVERNMENT WANTS FUTURE LAW TO BE

11  INCORPORATED, IT'S ITS BURDEN.  THE GOVERNMENT HAS JUST CITED A

12  SERIES OF CASES IN WHICH YOU HAVE THIS PHRASE WHICH IT HAS SAID

13  SAYS THAT YOU INCORPORATE SUBSEQUENT LAW AS WELL AS FUTURE LAW.

14  IT DOESN'T, YOUR HONOR.

15       THE GIPSON PHRASE IS, THAT "CONTRACTS ARE, DEEMED TO

16  INCORPORATE AND CONTEMPLATE NOT ONLY EXISTING LAW, BUT THE

17  RESERVE POWER OF THE STATE TO AMEND THE LAW OR ENACT ADDITIONAL

18  LAWS FOR THE PUBLIC GOOD AND IN PURSUANCE OF PUBLIC POLICY."  IF

19  THAT STATEMENT WERE A STATEMENT THAT CONTRACTS INCORPORATE NOT

20  ONLY ALL EXISTING LAW, BUT ALL FUTURE LAW, CONTRACTS WOULD BE

21  UTTERLY MEANINGLESS AND THE STATEMENT WOULD BE WRONG.  THAT

22  STATEMENT WAS DRAWN FROM THE CONTRACT CLAUSE JURISPRUDENCE OF

23  THE UNITED STATES SUPREME COURT, WHICH HAS SAID THAT CONTRACTS

24  CANNOT FREEZE THE GOVERNMENT OF ITS ABILITY TO PASS FUTURE LAWS

25  TO DEAL WITH FUTURE CONDUCT THEREAFTER.

1          YOU CAN NEGOTIATE AN EMPLOYMENT CONTRACT, FOR X DOLLARS

2   AN HOUR, BUT IF THE STATE CHOOSES TO USE ITS PUBLIC POLICY POWER

3   TO RAISE THE MINIMUM WAGE, YOU'RE GOING TO BE STUCK WITH THAT;

4   THE CONTRACT CAN'T PREVENT THAT, ALTHOUGH NO ONE WOULD SAY THAT

5   THE FUTURE MINIMUM WAGE STATUTE CREATES A CAUSE OF ACTION FOR

6   CONDUCT THAT OCCURRED BEFORE IT OCCURRED.

7          YOUR HONOR, I THINK THAT THE DIVIDING LINE HERE IS THE

8   ONE THAT'S MENTIONED IN ARATA.  IT'S IN GIPSON ITSELF.  IS THE

9   NEW LAW AFFECTING THE TERMS OF THE BARGAIN AND THE DEAL FOR THE

10  PAST CRIME OR IS IT AFFECTING THE PUNISHMENT YOU GET FOR FUTURE

11  CRIMES.  IF YOU'RE TALKING ABOUT SOMETHING THAT ONLY AFFECTS THE

12  PUNISHMENT OR THE TERMS OF THE AGREEMENT AS TO THE PAST CRIME,

13  THEN IT'S EXISTING LAW THAT CONTROLS; AND I THINK THAT THE COURT

14  SHOULD EITHER DECIDE -- IT SHOULD DENY THAT MOTION TO DISMISS ON

15  THAT BASIS, OR AT LEAST DENY IT ON THE BASIS THAT IT HAS TO

16  REACH TO EVIDENTIARY PROCEEDINGS THE QUESTION OF WHETHER THERE

17  IS EXISTENCE OF AN EXPLICIT PROMISE.

18         I WILL SAY THIS:  I THINK THAT THE COURT HAS RAISED THE

19  QUESTION OF CERTIFICATION TO THE CALIFORNIA SUPREME COURT.  MY

20  UNDERSTANDING IS THAT IT WOULD TAKE A DECISION BY THIS COURT AND

21  AN APPEAL FOR THE TRANSFERENCE TO OCCUR, BECAUSE I BELIEVE THAT

22  ONLY THE NINTH CIRCUIT CAN CERTIFY THE QUESTION TO THE

23  CALIFORNIA SUPREME COURT.

24         I WOULD AGREE THAT THE FIRST COMPONENT OF THIS, WHICH

25  IS THE DECISION OF WHETHER CONTRACT LAW INCORPORATES IN THIS

1  PROVISION OR WOULD INCORPORATE IN A SUBSEQUENT LAW, IS A STATE

2  LAW QUESTION THAT WOULD PROBABLY BENEFIT FROM EDUCATION FROM THE

3  CALIFORNIA SUPREME COURT.  BUT I THINK ONE WAY OR THE OTHER,

4  THIS COURT IS GOING TO HAVE TO BITE THE BULLET AND SEND IT TO

5  THE NINTH CIRCUIT, WHICH HAS THE POWER TO CERTIFY IT.  I MAY BE

6  WRONG ON THE QUESTION OF REFERRING IT, BUT I THINK I LOOKED AT

7  THAT BEFORE.  I THINK ONLY THE NINTH CIRCUIT HAS THE POWER.  IT

8  CAME IN A CASE IN FRONT OF JUDGE WHITE WHERE WE HAD THE ISSUE OF

9  MEGAN'S LAW BEFORE JUDGE WHITE.

10        THE COURT:  MAYBE YOU COULD CHECK THAT ONCE AGAIN.

11  GIVE ME A LETTER MEMO ON IT.

12        MS. RUFFRA:  MAY I RESPOND?  I AM NOT SURE ABOUT THE

13  ANSWER TO THAT, WHETHER A LOWER COURT OR THE NINTH CIRCUIT CAN

14  CERTIFY A QUESTION, BUT I WANTED TO RESPOND THAT THE QUOTE THAT

15  THE COUNSEL READ FROM UNITED STATES VERSUS TRANSFIGURATION  -- I

16  THINK IT WAS -- THAT IS A DIRECT APPEAL CASE, SO THAT MAY BE THE

17  LAW OF THE NINTH CIRCUIT ON DIRECT APPEAL, THAT THE STATE HAS TO

18  SPECIFICALLY SAY, "WE ARE RESERVING THE POWER TO CHANGE THE

19  LAW".  BUT THAT'S NOT THE STATE OF THE LAW IN CALIFORNIA.  THIS

20  CASE WAS GOVERNED BY CALIFORNIA CONTRACT LAW.

21        ALL THESE CASES WE CITED THAT RELY ON THE GIPSON RULE

22  SPECIFICALLY SAY THAT IN CALIFORNIA A CONTRACT INCORPORATES

23  FUTURE CHANGES IN THE LAW.  SO THAT DIRECT APPEAL CASE FROM THE

24  NINTH CIRCUIT IS TOTALLY IRRELEVANT; AND BECAUSE CALIFORNIA

25  CONTRACT LAW JUDGES ALL OF HAVE THIS OBJECTIVELY, I DON'T REALLY

1   SEE EVEN HOW AN EVIDENTIARY HEARING WOULD WORK.  I MEAN, THE

2   COURT COULD TAKE TESTIMONY FROM THE PLAINTIFF AND HE COULD SAY

3   WHATEVER IT IS HE IS GOING TO SAY, BUT ULTIMATELY THE QUESTION

4   IS WHAT IS THE PLAIN LANGUAGE OF THAT AGREEMENT, WHAT DOES THAT

5   SAY, AND WHAT WAS THE REASONABLE EXPECTATION OF THE PROMISEE,

6   WHICH IS OBJECTIVE.  I THINK IT WOULD BE EVEN IRRELEVANT FOR HIM

7   TO TRY TO TESTIFY ABOUT WHAT HE PERSONALLY BELIEVED.

8         THE COURT:  MAYBE.  IN ANY EVENT, YOU MIGHT HAVE BEEN

9   BETTER OFF NOT ATTACHING THE PLEA AGREEMENT TO THE COMPLAINT.

10  BUT I APPRECIATE THE FACT THAT YOU DID.  I WILL TAKE THE MATTER

11  UNDER SUBMISSION.  IT'S DEFINITELY AN INVENTIVE ARGUMENT, AND

12  ONE HOPES THAT IT GETS DECIDED ON A LEGAL BASIS, NOT A POLITICAL

13  ONE, EVENTUALLY.  THANK YOU BOTH.  EXCELLENT JOB.

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8        I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE

9  TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER.

10

11

12

13

14

15

16  JUNE 18, 2008

17

18

19

20  /S/JUANITA GONZALEZ

21

22

23

24

25